## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| HUMAN RIGHTS DEFENSE CENTER, <br><br> *Plaintiff*, <br><br><br><br> v. <br><br> BOARD OF COUNTY COMMISSIONERS FOR STRAFFORD COUNTY, NEW HAMPSHIRE; et al. <br> *Defendants*. | Case No.: 1:22-cv-00091-LM |

## REPLY MEMORANDUM TO DEFENDANTS' OBJECTION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Plaintiff Human Rights Defense Center ("HRDC") respectfully submits this Reply to Defendants' Objection to Plaintiff's Motion for Preliminary Injunction in accordance with Local Rule 7.1(e). Defendants' admission that they do not allow books or periodicals to be delivered in the mail to inmates effectively concedes HRDC's likelihood of success on the merits and that the balance of equities tips in Plaintiff's favor. Therefore, Plaintiff's request for a preliminary injunction should be granted.

I.     **PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIM BECAUSE IT IS CLEARLY ESTABLISHED THAT DEFENDANTS' BLANKET BAN ON ALL PERIODAICALS AND BOOKS MAILED BY PUBLISHERS TO INMATES IS UNCONSTITUTIONAL**

      a.   **Defendants' Blanket Ban on All Periodicals and Books Mailed by Publishers to Inmates Violates Plaintiff's First Amendment Rights**

Defendants misconstrue the rights at stake in this case. While defendants admit that their facility has a complete ban on mail to inmates, including books and periodicals (hereafter referred to as the "Blanket Ban"), they erroneously frame the question as whether inmates can access

1

certain publications or whether inmates can communicate with HRDC. Def. Mem. in Supp. of Obj. 2, 5-6, 7 n.3 [ECF 26.1] (hereinafter, "Def. Obj."). However, this case does not turn on the inmates' rights. Rather, it is about how Defendants' Blanket Ban infringes Plaintiff's well-established First Amendment right to mail unsolicited books and periodicals directly to inmates. *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989) ("'[p]rison walls do not form a barrier separating . . . free citizens from exercising their own constitutional rights by reaching out to those on the 'inside.'") (citations omitted); *Prison Legal News v. Lehman*, 397 F.3d 692, 698 (9th Cir. 2005) ("Publishers have a First Amendment right to communicate with prisoners by mail . . . ."); *Prison Legal News v. Livingston*, 683 F.3d 201, 212 (5th Cir. 2012) ("[P]risoners have the right to receive, and outsiders have a correlative right to send, unsolicited communications.").

The Blanket Ban against all books and periodicals mailed to inmates is presumptively unconstitutional. *Prison Legal News v. Simmons, sub nom Jacklovich v. Simmons*, 392 F.3d 420, 431 (10th Cir. 2004) (ban on gift publications unconstitutional); *Johnson v. Forrest County Sheriff's Dep't*, No. 98-60556, 210 F.3d 366, 2000 U.S. App. LEXIS 40970, at *2 (5th Cir. Feb. 15, 2000) (per curiam) ("A blanket ban on newspapers and magazines on the basis that they constitute a fire hazard or pose a threat to plumbing violates the First Amendment."); *Thomas v. Leslie*, Nos. 97-3346, 97-3361, 176 F.3d 489, 1999 U.S. App. LEXIS 7795, at *23 (10th Cir. Apr. 21, 1999) (finding that an "absolute ban on newspapers" violates the First Amendment); *Pepperling v. Crist*, 678 F.2d 787, 791 (9th Cir. 1982) ("[T]he blanket prohibition against receipt of [] publications by any prisoner carries a heavy presumption of unconstitutionality."); *Prison Legal News v. Babeu*, 933 F. Supp. 2d 1188, 1205 (D. Ariz. 2013) ("A blanket ban on newspapers and magazines violated clearly established constitutional law . . . ."); *Leachman v. Thomas*, No.

99-20209, 229 F.3d 1148, 2000 WL 1239126, at *8 (5th Cir. Aug. 9, 2000) (holding a blanket ban unconstitutional).

Defendants point to vague and undefined security concerns in justification for their Blanket Ban but in reality their response is overblown.  Security policies that infringe on civil liberties must address an actual security concern and be reasonably related. In *Spellman v. Hopper*, 95 F. Supp. 2d 1267 (M.D. Ala. 1999), a blanket ban on all newspaper and magazine subscriptions was unconstitutional because the blanket ban was an "exaggerated response" to the one documented incident of a prisoner using a magazine as a weapon. *Id.* at 1278-79. *See also Human Rights Def. Ctr. v. Sw. Va. Reg'l Jail Auth.*, 396 F. Supp 3d 607, 620-21 (W.D. Va. 2019) (holding unconstitutional a policy where "a publisher is not permitted to send any unsolicited book to any inmate, regardless of its contents and even if it poses no security risk").

Here, Defendants point to a handful of incidents in 2017 involving mail sent by outside parties but offer no evidence that books or periodicals were ever used to smuggle contraband into the prison. Def. Obj. 8. *Cf. Crofton v. Roe*, 170 F.3d 957, 959 (9th Cir. 1999) ("It is well settled that the First Amendment protects the flow of information to prisoners; any limitation must reasonably relate to a legitimate penological interest."). While Plaintiff is not unsympathetic to Defendants' efforts to eliminate contraband, the Blanket Ban is an exaggerated response to an unsubstantiated threat that significantly infringes upon important constitutional rights.

Furthermore, the alternative means of communication offered by Defendants are not constitutionally sufficient. First, the availability of tablets does not provide alternative means for sending periodicals or books. Plaintiff offers its periodicals using a subscription model that allows individual inmates to subscribe to and receive mailed copies of *Prison Legal News* and *Criminal Legal News*.  *See* PRISON LEGAL NEWS, https://www.prisonlegalnews.org/subscribe/print (last

3

accessed on Aug. 19, 2022). Defendants' Objection does not explain how this process can be replicated via the tablets. Second, Defendants' argument that inmates can still request HRDC's books and periodicals is irrelevant. Publishers' First Amendment right to communicate with inmates cannot depend on inmate actions since such a requirement "negates [the publisher's] right to send unsolicited [publications]." *Human Rights Def. Ctr.*, 396 F. Supp. 3d at 620-21. *See also Hrdlicka v. Reniff*, 631 F.3d 1044, 1049 (9th Cir. 2011) (noting that a publisher's "First Amendment interest in distributing . . . information does not depend on a recipient's prior request . . . ."). Moreover, there is reason to think that it is not as simple as requesting a subscription. When a prisoner attempted to challenge the current blanket mail ban, the Defendants required him to litigate. *See Larkin v. Brackett*, No. 19-cv-102-LM, 2020 WL 957600, at *1-2 (D.N.H. Jan. 24, 2020).

Defendants' additional argument that the online messaging system, gettingout.com, provides a viable alternative is also invalid. Gettingout.com does not provides Plaintiff or other publishers any way to directly send books or periodicals to inmates. Messages are limited to five hundred characters and the only attachments permitted are individual photos. *See* GTL, *How Long can my message be?*, (July 25, 2022), https://www.gettingout.com/faq/how-long-can-my-message-be; GTL, *Help Center*, (July 25, 2022), https://www.gettingout.com/help. Moreover, even if the service did allow HRDC to send books and periodicals, HRDC can only communicate with inmates after the inmate requests to communicate with HRDC. Def. Obj. 6. As stated above, Plaintiff's First Amendment right cannot depend on inmates' actions. *Human Rights Def. Ctr.*, 396 F. Supp. 3d at 620-21. There are no alternative means for Plaintiff to exercise its constitutional right to communicate directly with inmates. Plaintiff, therefore, is likely to prevail on the merits of its First Amendment claim.

**b.  Defendants Mischaracterize HRDC's Mailings as "Mass Mailings," Applying the Incorrect Due Process Standard, While Simultaneously Misapplying the *Mathews* Standard**

Defendants provide no explanation for why Plaintiff's mailings should be considered "mass mailings," nor can they. *See* Def. Obj. 10. Defendant cites *Perry v. Fla. Dep't of Corr.*, 664 F.3d 1359, 1367 (11th Cir. 2011) for the premise that mass mailings are judged by the due process test in *Mathews v. Eldridge*, 424 U.S. 319 (1976), as opposed to the more stringent requirements in *Procunier v. Martinez*, 416 U.S. 396 (1974). However, the Eleventh Circuit defines mass mailings as those sent to "each and every inmate at a given institution." *Prison Legal News v. Sec'y, Fla Dep't of Corr.*, 890 F.3d 954, 976 n.19 (11th Cir. 2018) (citing *Montcalm Pub. Corp. v. Beck*, 80 F.3d 105, 109 & n.2 (4th Cir. 1996)).

In this case, HRDC's mailings of books and periodicals were mailed in small batches and individually addressed. *See,* e.g.*,* Exhibit 1 ¶ 20 [ECF 3.2] (hereafter, "Wright Decl."). HRDC initiated mailings to thirty-one inmates in 2017, three in 2019, and five in 2020. Wright Decl. ¶¶ 20, 22, 25. At no point, has HRDC attempted to send mail to more than 12.7% of inmates, far from the standard adopted by the Eleventh Circuit—which Defendants rely upon. *See* Exhibit (Affidavit) Declaration of Christopher Brackett ¶ 9 [ECF 26.2] (hereafter, "Brackett Decl.").

In addition, contrary to Defendants' suggestion (Def. Opp. 11), *Martinez* remains equally salient for prison rules of general applicability. *See, e.g.*, *Jacklovich v. Simmons*, 392 F.3d 420, 422, 433-34 (10th Cir. 2004) (citing *Martinez* standard to conclude that lack of notice violated PLN's due process rights in case involving rules of general applicability, e.g. regulation prohibiting gift subscriptions); *Prison Legal News v. Cook*, 238 F.3d 1145, 1152-53 (9th Cir. 2001) ("Because we decide that Publisher and Prisoners have a constitutionally protected right to receive subscription non-profit organization standard mail, it follows that such mail must be afforded the

same procedural protections as first class and periodicals mail under Department regulations."). And there is reason to believe that Defendants' policy is not a rule of general applicability. Some HRDC publications were returned while others were never sent back. Wright Decl. ¶¶ 20-26. HRDC only found out about the Blanket Ban after receiving grievance paperwork from an inmate in June 2021. Wright Decl. ¶ 27.

Therefore, the Court should adopt the due process standard applied in *Martinez*. The First Circuit summarized the due process requirements under *Martinez* as follows: (1) notice should be given to the person writing letters to inmates when they are rejected, (2) the person writing the letter should be given a "reasonable opportunity to protest" the rejection, and (3) such appeals should be heard by a person not involved in the decision to reject the letter. *See Starr v. Knierman*, 474 F. App'x 785, 786 (1st Cir. 2012) (per curiam) (citing *Martinez*, 416 U.S. at 418-19). As previously explained, Defendants have provided *none* of these due process safeguards. *See* Pl.'s Mem. In Supp. Of Mot. For Prelim. Inj., 16-17 [ECF Doc. 3.2] (hereafter, "Pl. Mot.").

Furthermore, these requirements are *not* "unduly burdensome." *Martinez*, 416 U.S. at 419. Defendants provide no evidence to substantiate their claim that these safeguards impose an undue burden. *See* Def. Opp. 11.  Indeed, "providing a copy of [a rejection notice] to publishers of disapproved publications and allowing the publishers to respond in writing would pose a minimal burden on corrections officials." *Montcalm Publishing Corporation v. Beck*, 80 F.3d 105, 109 (4th Cir. 1996) (alteration added).

And finally, even if the Court accepts Defendants' due process test, Defendants still fail to provide the due process protections required by *Mathews v. Eldridge*, 424 U.S. 319 (1976). *Mathews*, as applied in this Circuit, still requires notice, as well as an opportunity to appeal the rejection to an independent party. *See Starr*, 474 F. App'x at 786 (applying *Mathews*, the court

found sufficient due process safeguards where the inmate received notice of the rejection, an explanation, and was able to protest the decision through an independent party). HRDC has not received an opportunity to appeal the Defendants' decision to reject its mail, nor has it even received *any* notice or explanation for the rejection. Defendants' assertion that HRDC must have received notice because, through Plaintiff's own investigation, it discovered why its mail was rejected has no grounding in either *Martinez* or *Mathews*. Def. Opp. 12. No case cited by Defendants holds that posting a general bulletin on a prison website satisfies the notice requirement in either *Martinez* or *Mathews*. For these reasons, Plaintiff is likely to prevail on the merits of its Due Process claim.

## II.   **DEFENDANTS' BLANKET BAN ON ALL BOOKS AND PERIODICALS MAILED BY PUBLISHERS TO INMATES IRREPARABLY HARMS PLAINTIFF**

Defendants' argument that Plaintiff does not continue to suffer irreparable harm ignores longstanding Supreme Court precedent. "The loss of First Amendment freedoms*, for even minimal periods of time*, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (emphasis added). Defendants' Blanket Ban remains in effect, preventing Plaintiff from exercising its First Amendment right to mail unsolicited books and periodicals directly to inmates. *Prison Legal News v. Lehman*, 397 F.3d 692, 698 (9th Cir. 2005).

Defendants' argument that the violation of Plaintiff's First Amendment rights is somehow diminished because Plaintiff took several years to bring this lawsuit is baseless. Def. Obj. 13. A constitutional violation is serious whenever it occurs. Defendants' brief is notably silent on caselaw to the contrary. The holding in *Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*, 645 F.3d 26 (1st Cir. 2011), relied upon by Defendants, applies to trademark violations, where waiting to file implicates serious concerns about trademark holders sleeping on their rights. *Voice*

7

*of the Arab World* is not applicable to First Amendment right violations, which the Supreme Court has repeatedly held constitute irreparable harm even for minimal time periods. *See Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) (citing *Elrod*, 427 U.S. at 373). Furthermore, as referenced above, the inconsistent application of the Defendants' policies and lack of notice made it unclear whether the Blanket Ban was in effect. HRDC, therefore, did not know it had an injury-in-fact until it was able to determine what was the Defendants' policy.

Defendants' second argument that there is no irreparable injury because they bought HRDC's books and subscribed to its paper periodicals, *Criminal Legal News* and *Prison Legal News*, is equally inapposite. This argument sidesteps the central issue in this case. Plaintiff did not commence litigation because its books and periodicals were not in the prison library—Plaintiff seeks to vindicate its First Amendment right to directly correspond with inmates via mailed paper books and periodicals. Plaintiff is still unable to do so. Def. Obj. 2. Nor does Defendants' promise to notify prisoners that HRDC's books and periodicals are available in the prison library remedy the ongoing harm to Plaintiff's First Amendment right to communicate *directly* with inmates. As previously stated, HRDC's rights here cannot hinge on third parties' actions. *See Human Rights Def. Ctr.*, 396 F. Supp. 3d at 620-21; *Hrdlicka v. Reniff*, 631 F.3d at 1049. Plaintiff, therefore, continues to suffer irreparable harm as long as the Blanket Ban remains in effect.[1]

## CONCLUSION

HRDC respectfully requests that the Court grant its Motion for Preliminary Injunction because it has met its burden showing that (1) it is likely to prevail on the merits of its claims, (2)

---

[1] Furthermore, Defendants' ad hominem attacks on Plaintiff's motivations for bringing this lawsuit are misplaced. Def. Obj. 13-14. It is plain from the Court's docket that multiple extensions have been obtained because of ongoing settlement negotiations, and while Federal Rule of Evidence 408 prohibits disclosing the contents of those negotiations, as the docket suggests, both parties have worked in good faith to resolve this dispute.

the balance of equities tips in its favor, (3) failure to implement an injunction will cause irreparable harm, and (4) a preliminary injunction is in the public interest.

Dated: August 19, 2022

Respectfully submitted,

Attorneys for Plaintiff Human Rights Defense Center

 /s/ Edward J. Sackman
Edward J. Sackman, Bar No. 19586
Matthew Miller, Bar. No. 271594
670 N. Commercial Street, Suite 108
P.O. Box 1120
Manchester, New Hampshire 03105
Tel.: (603) 623-8700
nsackman@bernsteinshur.com
mmiller@bernsteinshur.com

HUMAN RIGHTS DEFENSE CENTER
Daniel Marshall, Fla. Bar No. 617210
Jesse W. Isom, Fla. Bar No. 98588
P.O. Box 1151
Lake Worth, FL 33460
Tel.: (561) 360-2523
dmarshall@humanrightsdefensecenter.org
jwisom@humanrightsdefensecenter.org