UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW HAMPSHIRE

```
*******************************************
                                           *
Human Rights Defense Center,               *
         Plaintiff                         *
                                           *  C.A. #1:22-CV-91-LM
v.                                         *
                                           *
Board of County Commissioners for Strafford*
County, NH, Raymond F. Bower,              *
County Administrator, Christopher          *
Brackett, Superintendent                   *
and                                        *
John and Jane Does 1-20, Staff             *
         Defendants                        *
                                           *
****************************************
```

**Defendants' Proposed Findings of Fact and Rulings of Law**

The Defendants (hereinafter "the DOC"), by and through their attorneys, hereby submit the following Proposed Findings of Fact and Rulings of Law in accordance with this Court's Scheduling Order. [ECF 21]

**Introduction**

The issue now before the Court is the Motion for Preliminary Injunction (hereinafter "the motion") filed by Human Rights Defense Center (hereinafter "HRDC"), wherein HRDC seeks an order "(1) enjoining the improper censorship of HRDC's publications and correspondence; and (2) enjoining the continued violation of HRDC's Fourteenth Amendment rights by the failure to provide notice or any opportunity to appeal rejections of HRDC's mailings." [ECF 3, ¶3]

1

The DOC has briefed its position on the motion in its Objection to Plaintiff's Motion for Preliminary Injunction and supporting Memorandum of Law [ECF 26 & 26-1], in its Supplemental Memorandum of Law [ECF 29], and in its Surreply Memorandum of Law [ECF 31], all of which are incorporated here by reference. The DOC requests that the Court adopt the following proposed findings and rulings and deny the motion.

## **PROPOSED FINDINGS AND RULINGS**

### **Factual Background**

1. In 2017 the DOC experienced numerous inmate drug overdoses. After investigation, the origin of these dangerous drugs inside the DOC was determined to be incoming mail from those outside the DOC to its inmates. Declaration of Christopher Brackett, dated July 13, 2022, ("Brackett July Decl."), ¶ 4 [ECF 26-2]

2. To prevent the further introduction of drugs into the jail, the DOC implemented a policy to prohibit incoming non-legal "paper" mail to inmates (hereinafter "the policy"). Brackett July Decl. ¶5.

3. In place of paper mail, the DOC provided inmates with computer tablets, on which inmates could communicate with those outside of the DOC (including HRDC) at a cost that is less than the cost of a USPS stamp. Brackett July Decl., ¶6-13.

4. The DOC posted a notice of the policy on its website and HDRC was aware of it in June of 2017. Wright Decl., ¶ 19 [ECF 3.1].

5. The DOC also became aware that incoming "paper" books and periodicals sent to inmates were another source of drugs into the DOC population. Even books or periodicals that appeared to be sent from a publisher or retailer had the potential to contain drugs. Brackett July Decl., ¶15-17.

6. To prevent drugs from coming into the DOC through books or periodicals, the DOC expanded the policy to include all books and periodicals sent to inmates.  Brackett July Decl., ¶15-16.

7. When the policy was expanded to include books and periodicals, the DOC expanded the offerings on the tablets so that DOC inmates had access to more than 5000 books and thousands of periodicals, all at no cost to them.  Brackett July Decl., ¶18-22.

8. A small "paper library" is also maintained at the DOC to ensure that those few inmates without tablets have access to books and periodicals.  Brackett July Decl., ¶23.

9. When the DOC expanded the policy to include books and periodicals, it posted a notice on its website so that members of the community at large would be aware of it.  Brackett July Decl., ¶25.

10. At no time prior to the filing of this action did HRDC ever attempt to communicate with the DOC to raise its complaints about the DOC's policies and to investigate alternative means of providing DOC inmates access to its books and periodicals.  Brackett July Decl., ¶27.

11. Since the filing of this action, the DOC purchased HRDC's books and notified inmates of their availability. DOC Hearing Exhibit A

12. The DOC has also ordered subscriptions to both of HRDC's monthly periodicals and, upon receipt, will make the available to all inmates and notify the inmates of this.  Declaration of Christopher Brackett, dated August 4, 2022 ("Brackett August Decl."), ¶ 4 [ECF 29-2] and DOC Hearing Exhibit B.

**First Amendment Rights Implicated**

13. Regulations affecting the sending of mail and publications to incarcerated inmates are analyzed under the four-part test articulated by the Supreme Court in Turner v. Safley, 482 U.S. 78, 89 (1987) and Thornburgh v. Abbott, 490 U.S. 401, 413 (1989).

14. The Turner test states that the relevant factors in deciding the constitutionality of a prison regulation involve:

> (1) whether there is a valid, rational connection between the regulation and the legitimate government interest put forward to justify it;
> (2) whether alternative means to exercise the right exist;
> (3) the impact that accommodating the right will have on prison resources; and
> (4) the absence of alternatives to the prison regulation.

15. Courts must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." Overton v. Bazzetta, 539 U.S. 126, 132 (2003) (emphasis added). Such regulations are "valid if [they are] reasonably related to legitimate penological interests." Turner, 482 U.S. at 89.

16. "The Supreme Court has made it clear that while alternative means of communication do not have to be 'ideal,' they do have to be 'available.'" Human Rights Def. Ctr. v. Baxter Cty. Ark., 999 F.3d 1160, 1165 (8th Cir. 2021), citing Overton, at 135; and Pell v. Procunier, 417 U.S. 817 (1974).

**Fourteenth Amendment Rights Implicated**

17. HRDC asserts that it "has a right under the Due Process Clause of the Fourteenth Amendment to receive notice of and an opportunity to appeal" its rejected mailings. (Compl.

[ECF Doc. 1] ¶ 98). HRDC further alleges that DOC's "policies and practices fail to provide HRDC and other senders with adequate notice and an opportunity to be heard." Id. at ¶ 99.

18. The mailing of publication to numerous inmates at a time constitutes a mass mailing. See Hum. Rts. Def. Ctr. v. Baxter Cnty., Arkansas, at 872–73.

19. "Since mass mailings require a lower standard for due process guidelines, we evaluate what process is due under the test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976)." Hum. Rts. Def. Ctr. v. Baxter Cnty. Arkansas, at 1167; Perry v. Sec'y, Fla. Dep't of Corr., 664 F.3d 1359, 1367 (11th Cir. 2011).

20. "The specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. Mathews at 335.

21. "Due process does not require copy-by-copy notice [if] later denials of identical publications amount to the routine enforcement of a rule with general applicability." Baxter Cnty. Arkansas, 999 F.3d at 1167; Prison Legal News v. Sec'y, Fla. Dep't of Corr., 890 F.3d 954, 976 n.20 (11th Cir. 2018); Prison Legal News v. Livingston, 683 F.3d 201, 223 (5th Cir. 2012).

**Preliminary Injunction Standard- HRDC's Burden**

22. "[T]he issuance of preliminary injunctive relief is 'an extraordinary and drastic remedy that is never awarded as of right.'" Harry v. Countrywide Home Loans, Inc., 215 F. Supp. 3d 183, 186 (D. Mass. 2016) (citations omitted), aff'd, 902 F.3d 16, 18 (1st Cir. 2018).

23. "To demonstrate likelihood of success on the merits, plaintiffs must show more than mere possibility of success – rather, they must establish a strong likelihood that they will ultimately prevail." Sindicato Puertorriqueño de Trabajadores, SEIU Local 1996 v. Fortuño, 699 F.3d 1, 10 (1st Cir. 2012) (per curiam) (citations and quotations omitted).

24. "Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011) (internal citation and quotations omitted).

**Rulings**

25. The Court finds that there is a rational connection between the policy and the DOC's valid concerns about institutional security and inmate safety posed by the introduction of drugs through paper mail, books, and magazines.

26. Were the Court to enjoin the policy in the manner sought by HRDC, the DOC's staff and inmates would once again be subjected to incoming drugs through the mail.

27. Since the implementation of the policy, HRDC has had the ability to communicate with inmates through the tablet system in a manner that is faster and cheaper than through "paper mail."

28. The Court finds this to be a reasonable alternative to communicating with inmates via paper mail.

29. Thus, to the extent that the motion claims that the policy impairs HRDC's ability to communicate with DOC inmates, the Court finds that HRDC has not established that it is likely to succeed on this claim.

30. HRDC's books are now available to all DOC inmates.

31. The Court finds that having HRDC's books available to all inmates through the paper library is a reasonable alternative to HRDC sending books to individual inmates.

32. Therefore, HRDC has failed to establish a reasonable likelihood of success on its claim that the policy impermissibly impairs its First Amendment rights to distribute is books to DOC inmates.

33. The DOC has ordered a subscription to both of HRDC's monthly periodicals, and upon receipt, the DOC intends to make them available to all DOC inmates through the paper library.

34. The Court finds that having HRDC's periodicals available to all inmates through the paper library is a reasonable alternative to HRDC sending periodicals to individual inmates.

35. Therefore, HRDC has failed to establish a reasonable likelihood of success on its claim that the policy impermissibly impairs its First Amendment rights to distribute is periodicals to DOC inmates.

36. HRDC has also failed to establish that it will suffer irreparable harm by the continued enforcement of the policy.

37.  As to HRDC's claims that the policy has deprived it of notice and opportunity to be heard under the Fourteenth Amendment, the Court finds that HRDC now has notice of the policy so that HRDC cannot establish that it will suffer irreparable harm by the continued enforcement of the policy.

38. Therefore, the motion is denied in full.

Respectfully Submitted,
Board of County Commissioners for Strafford County NH
Raymond Bower
Christopher Brackett
By Their Attorneys,
Friedman Feeney, PLLC

/s/ Christine Friedman, NH Bar No. 8780          Dated: October 11, 2022
Christine Friedman
Donald P. Reape
Friedman Feeney, PLLC
95 N. State Street, Suite 5
Concord, NH 03301
chris@friedmanfeeney.com / dreape@friedmanfeeney.com
603-736-7683 / 603-688-9994

**CERTIFICATE OF SERVICE**

    I hereby certify that a copy of this motion was served on the following persons on this date and in the manner specified herein:

Electronically Served through ECF:

All counsel of record

/s/ Christine Friedman          Dated: October 11, 2022
Christine Friedman